# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

THADDEUS M. LIETZ,
    Plaintiff,

v.                                         Case No. 12-CV-00006

MICHAEL DITTMANN, SCOTT ECKSTEIN,
CAPTAIN CHOJNACKI, MS. POWLESS, and
KELLY MUESKE,
    Defendants.

## DECISION AND ORDER

Now before me is defendants' motion for summary judgment. Pro se plaintiff Thaddeus Lietz has also filed an untimely motion for summary judgment and a motion for an order in regards to summary judgment in favor of plaintiff. Plaintiff bases these motions on defendants' decision not to file a formal reply brief. He believes he is entitled to summary judgment because defendants did not contest the arguments in his brief. Reply materials are optional and do not constitute a waiver of arguments. See Civil L.R. 56(b)(3) (E.D. Wis.). Therefore, I will deny plaintiff's motions and consider defendants' motion for summary judgment.

Plaintiff made a number of requests within his response to defendants' motion for summary judgment. Without separate motions, I will not consider his requests, though I will say generally that a response to a motion for summary judgment is too late to make additional discovery requests or raise discovery issues. Additionally, any request for a court order must be made by a motion that is in writing, states with particularity the grounds for

seeking the order, and states the relief sought. Fed. R. Civ. P. 7(b). Asking for relief within another document is not sufficient.

## I. BACKGROUND

With their motion for summary judgment, defendants filed proposed findings of fact that were supported by several notarized affidavits and exhibits authenticated by the affidavits. In response, plaintiff filed a document entitled "Reply to Defendants' Brief," which is a brief that is not notarized or sworn. Attached to the brief are twenty-three pages of documents that are not properly authenticated. I have reviewed the documents and, to the extent that they speak for themselves, I have considered them. Nevertheless, plaintiff has not objected to defendants' proposed findings of fact or submitted his own. Therefore, I will deem the defendants' statements of fact uncontroverted for the purpose of deciding summary judgment. See Civil L.R. 56(b)(4).

Plaintiff was incarcerated at Redgranite Correctional Institution ("Redgranite") from July 13, 2011, to June 19, 2012. Defendant Maureen Powless has been employed by the Wisconsin Department of Corrections (the "DOC") as a librarian at Redgranite since November 27, 2005. In her capacity as librarian, Powless's responsibilities include oversight of the day-to-day operations of the Redgranite library and law library, as well as the provision of numerous programs and services for inmates and staff. She also supervises the inmate workers assigned to the library.

Defendant Gregory Chojnacki has been employed by the DOC as a Captain at Redgranite since October 31, 2004. Chojnacki is responsible for assisting in the coordination of all security operations in the institution, monitoring inmate movements
2

outside the housing units, and providing backup for security supervisors as needed. In addition, he participates in the development, implementation and modification of overall institution goals, policies and procedures.

Defendant Kelly Mueske has been employed by the DOC as a Corrections Unit Supervisor at Redgranite since January 31, 1999. She also served as acting Education Director from August 22, 2011, to April 8, 2012. Mueske is responsible for the security, activities and general living conditions within her assigned housing unit.

Defendant Scott Eckstein has been employed by the DOC as Deputy Warden of Redgranite since July 18, 2010. In his capacity as Deputy Warden, Eckstein is responsible for the overall administration and operation of Redgranite in the Warden's absence. He assists in developing, implementing and administering the security, treatment and support services for Redgranite.

Defendant Michael Dittmann has been employed by the DOC as Warden at Redgranite since December 19, 2009. Dittmann has general supervisory authority over Redgranite operations as provided in the Wisconsin Statutes. Eckstein has general supervisory authority under the Warden over Redgranite operations as provided in the Wisconsin Statutes. Dittmann and Eckstein do not supervise the day-to-day operations of individual DOC employees at Redgranite.

Pursuant to Policy/Procedure Number DAI 309.15.01 adopted by the DOC's Division of Adult Institutions, inmates at Redgranite are allowed to assist one another with legal work in the institution's law library, but they must be signed up together on the sign-up sheet. (Aff. Maureen Powless, Ex. 1000, DAI Policy # 309.15.01, "Institution Law Library," p. 4, § I(B)(1)(c), ECF No. 28-1.) Inmates using the law library computers are also required

to read, sign and follow the computer usage rules outlined in the Redgranite Library Computer Usage Request Form. (Id. p. 5, § I(D)(2).) Plaintiff signed one of these forms on October 11, 2011. By signing the form, plaintiff acknowledged that, if he was granted time to use a library computer, it would be only for preparing his "personal legal work" and that failure to follow the computer usage rules would result in loss of library time and/or discipline. (Powless Aff., Ex. 1001, ECF No. 28-2.)

On October 17, 2011, plaintiff was granted time to use a law library computer. He was writing up a two-page brief and affidavit in support of a post-conviction motion in State of Wisconsin v. Martwon Brown, which was saved to his disk, but he was not working with Brown in the library at the time. Plaintiff went to Powless's office to request a printout of the document he had been working on, and she questioned why he was preparing a document pertaining to another inmate. She pointed out that the request form to use the library workstation had clearly indicated that he was only to do his own legal work and that his disk was for his own files. Plaintiff said that, although he had signed the request form, he had failed to read it first. He also claimed that his attorney had directed him to recreate the documents because he needed them for his own case.

Powless advised plaintiff that re-creating legal documents was not required by the courts; it was simply necessary to cite the case. She also let him know that what he was doing could possibly be perceived as forgery. Plaintiff told Powless that he had to re-create the documents because the case was unpublished. Again, Powless advised plaintiff that he could still simply cite the case. Plaintiff responded by stating that he was not doing this paperwork for inmate Martwon Brown, who was at the time housed in the same unit as plaintiff, but for another inmate with the same name. Powless checked DOC inmate

4

Case 2:12-cv-00006-LA   Filed 09/10/13   Page 4 of 14   Document 46

records, but there was no other inmate with the name Martwon Brown. At this point, Powless informed plaintiff that she was going to delete that particular document from his disk. She deleted the document in question from plaintiff's disk, and plaintiff returned to his housing unit. She did not delete any other documents from his disk.

On October 18, 2011, plaintiff filed an inmate complaint alleging that Powless had denied him his law library privileges and destroyed his property without proof that he had violated the computer usage rules. On October 20, 2011, Powless received a letter from plaintiff informing her that he had filed an inmate complaint against her and might file suit against her unless she allowed him to return to the library and re-create the document she had deleted from his disk. Powless took this letter to Security and turned it over to Chojnacki. Powless asked Chojnacki to speak with plaintiff about what had taken place in the law library on October 17, 2011.

On October 20, 2011, plaintiff was called to the Security Office. Chojnacki discussed what occurred with plaintiff, reiterating that printing another inmate's legal work was prohibited, and advised him that Powless would be writing a conduct report as a result of his actions. During Chojnacki's conversation with plaintiff, plaintiff asked Chojnacki if he thought Powless would refrain from writing a Conduct Report if plaintiff withdrew his inmate complaint. Chojnacki informed plaintiff that he could not speak for Powless and that it was plaintiff's right to file an inmate complaint if he felt he had been wronged.

On October 25, 2011, Powless completed a conduct report to be issued to plaintiff. She did not write the conduct report because plaintiff had filed an inmate complaint. She had been advised by Security that it was necessary for her to write a conduct report based on the events which occurred in the law library on October 17, 2011.

5

On October 26, 2011, after performing an investigation, the Inmate Complaint Examiner ("ICE") rejected plaintiff's complaint based on the fact that a conduct report had been issued. Once a conduct report has been issued, the disciplinary process is initiated and inmate complaints are deemed outside of the scope of the Inmate Complaint Review System ("ICRS"). Plaintiff did not appeal the rejection of his complaint.

Mueske was the hearing officer who conducted the hearing on plaintiff's conduct report. She based her decision on the information contained in the report, as well as the fact that plaintiff had provided staff with inconsistent information to justify his actions. On November 4, 2011, Mueske found plaintiff guilty of violating Wis. Admin. Code § DOC 303.24 (Disobeying Orders) and Wis. Admin. Code § DOC 303.26 (Misuse of State Property), which are considered Minor Offenses. Plaintiff's disposition was 30 days loss of library. Mueske did not find plaintiff guilty because he filed an inmate complaint.

Plaintiff appealed the decision of the hearing on November 11, 2011. On November 25, 2011, on behalf of Warden Dittmann and himself, Eckstein affirmed the hearing officer's decision, noting that the conduct report and hearing results supported both the finding of guilt and the disposition.

The policy regarding the Institution Law Library provides that inmates who are given disciplinary restriction, but who have legitimate, pressing legal concerns which require access to the law library may request necessary access. Pursuant to the Redgranite Inmate Handbook, law library access is approved by the Education Director. During this time period, Mueske was the acting Education Director. Mueske was easily accessible and often passed plaintiff on the unit. Yet, he never approached her to discuss additional law

6

library time. In fact, plaintiff never requested access to the law library after the disposition of the conduct report on November 4, 2011, until he was released from prison.

Some time later, it was brought to Chojnacki's attention that plaintiff had reported to the Warden and Deputy Warden via letter that Chojnacki had offered to have the conduct report Powless filed dismissed if plaintiff agreed not to go forward with the inmate complaint he submitted against Powless. Based on this information, Chojnacki prepared Conduct Report 2135469 on November 17, 2011, asserting that plaintiff had violated Wis. Admin. Code § DOC 303.271, Lying About Staff, which is a Major Offense. Chojnacki did not prepare the conduct report because plaintiff had filed an inmate complaint.

On January 3, 2012, plaintiff filed this lawsuit. On January 12, 2012, the hearing officer found that plaintiff was guilty of lying about staff based on the statements in Chojnacki's Conduct Report and the letter plaintiff had sent. Plaintiff was given 90 days of disciplinary separation. Plaintiff appealed the decision of the hearing officer, and Deputy Warden Eckstein affirmed the hearing officer's decision, noting that the conduct report and hearing results supported both the finding of guilt and the disposition.

Consistent with Wis. Admin. Code § DOC 310.05, inmates must exhaust all administrative remedies that the DOC has promulgated by rule before they may commence a civil action or special proceeding against an officer, employee or agent of the department in that person's official or individual capacity. In her capacity as Corrections Complaint Examiner ("CCE"), Welcome Rose diligently searched the record of inmate complaints, and her search disclosed that plaintiff filed just two inmate complaints prior to January 3, 2012. One was not related to the claims in this case. The other, inmate complaint RGCI-2011-20644, which related to Powless destroying plaintiff's computer files, was rejected by the

ICE. Plaintiff did not appeal that rejection as he could have under Wis. Admin. Code § DOC 310.11(6).

## II. DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

At screening, I allowed plaintiff to proceed on retaliation claims against defendants Powless, Chojnacki, Mueske, Dittmann and Eckstein regarding the conduct reports filed against plaintiff after he filed an inmate complaint and wrote to Dittmann and Eckstein complaining about staff actions. I also allowed plaintiff to proceed on access to the courts claims against defendants Powless and Mueske regarding the destruction of plaintiff's legal documents and subsequent disciplinary restrictions on his use of the law library. The complaint alleged that his loss of access to the law library was a contributing factor in his postconviction motion being denied and in judgment being entered against him in a small claims action he was pursuing in Waushara County Case No. 2011SC000495.

Defendants argue that they are entitled to summary judgment on plaintiff's claims on several grounds. First, they argue that plaintiff failed to exhaust his administrative

8

remedies. Second, they assert that Dittmann was not personally involved in any deprivation. Third, defendants contend that plaintiff cannot show he would have succeeded in the underlying cases but for the restrictions on his access to the law library. Fourth, defendants maintain that there were legitimate, non-retaliatory reasons for issuing the conduct reports. Finally, defendants submit that they are entitled to qualified immunity.

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(e). The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 87, 92 (2006); see also, Pozo v. McCaughtry, 286 F.3d 1022, 1023 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."). It is a defendant's burden to establish that a plaintiff has failed to exhaust administrative remedies. Walker v. Thompson, 288 F.3d 1005, 1009 (7th Cir. 2002).

The ICRS is the administrative remedy available to inmates within the Wisconsin prison system for complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). To use the ICRS, an inmate must file a complaint with the ICE within 14 days after the occurrence giving rise to the complaint. Id. §§ DOC 310.07(1), 310.09(6). Complaints submitted later than 14 days after the event may be accepted for good cause. Id. § DOC 310.09(6). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the

9

"appropriate reviewing authority" for a decision within 10 days of the recommendation. Id. §§ DOC 310.11(2), 310.11(11), 310.12. "An inmate may appeal a rejected complaint within 10 calendar days only to the appropriate reviewing authority who shall only review the basis for the rejection of the complaint. The reviewing authority's decision is final." Id. § DOC 310.11(6). The ICRS is available for inmates to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Id. § DOC 310.08(1). However, an inmate may not use the ICRS to raise "[a]ny issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303." Id. § DOC 310.08(2)(a). After an inmate has exhausted the disciplinary process, he or "may use the ICRS to challenge only the procedure used in . . . the disciplinary process . . . ." Id. § DOC 310.08(3).

 I will dismiss without prejudice plaintiff's retaliation claims because he did not exhaust his administrative remedies. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004) (dismissals under 42 U.S.C. § 1997e(a) for failure to exhaust should be without prejudice). It is undisputed that plaintiff did not file any inmate complaints alleging that the conduct reports he received were retaliatory. His only complaint was filed on October 18, 2011 before he received either conduct report. Plaintiff says it would have been futile for him to file retaliation complaints because they would have been rejected as related to the conduct reports, but this was not his decision to make. "An inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement." Thornton v. Snyder, 428 F.3d 690, 694 (7th Cir. 2005). Additionally, the administrative regulations do not say that inmates are prohibited from filing complaints that are related

10

to conduct reports. They simply require an inmate to exhaust the disciplinary process first and prohibit an inmate from using the ICRS to review the merits of the Warden's disciplinary decision. It is possible the ICE would have found that plaintiff's claims that the conduct reports were retaliatory presented separate questions from whether plaintiff was, in fact, guilty of the conduct alleged in the reports.

Plaintiff can, however, proceed on his claims against Powless and Mueske for denial of his right to access the courts. The inmate complaint filed by plaintiff on October 18, 2011 alleged that Powless had unfairly denied him access to the law library and destroyed his legal documents. The ICE rejected this complaint because it was related to the conduct report Powless filed on October 25, 2011. The rejection stated,

> It is not within the scope of the [ICRS] to investigate circumstances leading up to a conduct report and then determine whether or not that report should have been written. It is, however, one of the duties of the disciplinary committee, and the complainant will have the opportunity to present any defense at that time.

(Aff. Gregory Chojnacki, Ex. 1004, p. 2, ECF No. 29-1.) Defendants argue that plaintiff failed to exhaust his administrative remedies because he did not appeal this rejection, but it is not clear that an appeal would have been sufficient to exhaust plaintiff's remedies. As noted, the administrative regulations suggest that the proper course of action was for plaintiff to wait and file a new complaint after he had finished exhausting the disciplinary proceedings. Plaintiff did not do this either, but this was probably because he was confused by the ICE's rejection. The rejection did not tell plaintiff that he could file a new complaint after the completion of the disciplinary proceedings. It said that his complaint was outside the scope of the ICRS and told him he should raise it as a defense to the conduct report. Plaintiff appears to have followed this instruction. In his appeal of Mueske's

11

ruling (in her capacity as the hearing examiner), plaintiff argued that his loss of library privileges violated his constitutional rights as a pro se litigant. Since plaintiff appears to have followed the instructions given to him by the ICE, I find that he exhausted his administrative remedies. See Dole v. Chandler, 438 F.3d 804 (7th Cir. 2006) (suit not dismissed for failure to exhaust where failure was result of prison officials' error); see also Westefer v. Snyder, 422 F.3d 570, 580 (7th Cir. 2005) (where prison officials failed to identify the proper route for exhaustion, suit could not be dismissed for failure to exhaust). As a result, I will consider the merits of plaintiff's access to the courts claims.

It is well established that prisoners have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977). This right "requires prison authorities to assist inmates in preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828. To establish a denial of his constitutional right, an inmate must show that the prison had deficient legal facilities and that he was hindered in his efforts to pursue a particular legal claim. See Lewis v. Casey, 518 U.S. 343, 351 (1996); see also Alston v. Debruyn, 13 F.3d 1036, 1040–41 (7th Cir. 1994) (holding that inmate must establish (1) the failure of prison officials to assist in the preparation and filing of meaningful legal papers and (2) some quantum of detriment caused by the challenged conduct). Even if the inmate can establish an "absolute deprivation of access to all legal materials," his claim will fail absent identification of some injury linked to the deprivation. Lewis, 518 U.S. at 353 n.4.

First, plaintiff's claims fail to the extent they are based on the loss of his small claims action because the injury requirement is not satisfied by all types of frustrated legal claims.

12

> Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Id. at 355. Second, there is no evidence that the 30-day suspension of plaintiff's library privileges interfered with his right of access to the courts because he still had the right to apply for access to the law library if he needed it to address a pressing legal concern.

Finally, plaintiff's claim that his postconviction motion was denied because Powless destroyed his legal documents fails because plaintiff has not proven that Powless intentionally interfered with his access to the courts. See Kincaid v. Vail, 969 F.2d 594, 602 n.10 (7th Cir.1992); see also Snyder v. Nolen, 380 F.3d 279, 291 n.11 (7th Cir. 2004) (per curiam) ("[W]e have made clear that an allegation of simple negligence will not support a claim that an official has denied an individual of access to the courts."). The evidence shows that Powless believed plaintiff was doing another inmate's legal work, which was a violation of the library's rules. That is why she deleted the documents on his disk. Plaintiff has not cited to any case that holds that an inmate has a right to possess the legal work of another inmate. Therefore, Powless and Mueske are entitled to summary judgment on all of plaintiff's access to the courts claims.

**THEREFORE, IT IS ORDERED** that defendants' motion for summary judgment (Docket #25) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (Docket #43) is **DENIED**.

13

**IT IS FURTHER ORDERED** that plaintiff's motion for order in regards to summary judgment (Docket #45) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's retaliation claims against defendants Powless, Mueske, Chojnacki, Dittmann, and Eckstein are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter summary judgment in favor of defendants Powless and Mueske on plaintiff's access to the courts claims.

Dated at Milwaukee, Wisconsin, this 10th day of September, 2013.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge